UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 06-CIV-22880-HOEVELER

MICROSOFT CORPORATION,

    Plaintiff,

v.

TECHNOLOGY ENTERPRISES, LLC, et al.

    Defendants.
_____/

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT AS TO DAMAGES

BEFORE the Court are cross-motions for summary judgment as to damages [ECF Nos. 157 and 158]. The motions are fully briefed and the Court heard arguments on March 18, 2011. For the reasons that follow, Microsoft's motion for summary judgment is granted, and the defendants' motion for summary judgment is denied.[1]

## Background

On September 28, 2009 the Court granted Microsoft's motion for partial summary judgment, holding that the defendants imported and distributed Microsoft's products in violation of the Copyright Act. In making that ruling, the Court found it was undisputed that the defendants, Technology Enterprises and the company's owner, James

---

[1] Microsoft also moved to strike the defendants' motion for summary judgment, claiming that the motion had been filed without leave from the Court. The motion to strike [ECF No. 159] is denied.

Craghead (collectively, "Technology Enterprises"), imported copies of Microsoft's copyrighted "Student Media" software discs that were manufactured overseas and not licensed for distribution in the United States. The Court rejected the defendants' contention that the importation was protected by the "first sale doctrine." The Court also held that none of the defendants' affirmative defenses applied. Thus, the undisputed facts established the defendants' liability for importing Microsoft software not allowed for distribution in the United States, in violation of 17 U.S.C. § 602(a), and distributed the software in violation of 17 U.S.C. § 106(3). The only question remaining was the amount of damages. The Court granted the defendants' request to temporarily stay proceedings as to damages pending the appeal of the i4i patent litigation out of the Eastern District of Texas.[2] After a hearing on October 10, 2010, I lifted the stay, denied the defendants' request to re-open discovery, and directed the parties to file summary judgment motions on damages.

## I. Legal standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

---

[2] In the stay order, I mistakenly referred to the i4i case as involving a trademark dispute, an obvious clerical error.

judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of establishing the absence of a genuine issue of material fact lies with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). This standard is not affected by the filing of cross motions for summary judgment, and the Court must determine for each side whether a judgment may be entered in accordance with Rule 56.

## II. **Microsoft's motion**

### A.

Microsoft seeks to recover the profits that Technology Enterprises earned from selling Microsoft Student Media discs in the United States between January 2006 and May 2008. In general, a successful copyright plaintiff may elect between two monetary remedies. The first option is recovery of "the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement." 17 U.S.C. § 504(b). In lieu of actual damages and profits, the copyright owner may elect to recover the second option, "an award of statutory damages. . . in a sum of not less than $750 or more than $30,000 as the court considers just."

17 U.S.C. § 504(c)(1). Here, Microsoft proceeds under § 504(b), and claims only the defendants' profits gained from the infringement.

In establishing the infringer's profits, "the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). The copyright plaintiff must allege a causal connection between the infringement and the profits claimed, and may not "seek gross revenues based entirely on a speculative connection to the plaintiff's claim." Fodere v. Lorenzo, 2011 WL 465468 at *2 (S.D. Fla., Feb. 04, 2011) (citing Thornton v. J Jargon Co., 580 F. Supp. 2d 1261, 1280 (M.D. Fla. 2008). Here, Microsoft established a direct and concrete connection between the defendants' copyright infringement and the $220,954.64 in profits the defendants earned from selling the discs.

According to the declaration of Susan Rubin, attached to Microsoft's motion, she relied on information in the discovery materials and the defendants' own admissions to calculate the $220,954.64 amount. She states that she considered the number of discs the defendants sold, the total revenue from those sales, the sales prices for those units, the acquisition prices for those units, the total acquisition cost for each title, the unit profit per title, the profit obtained per titled, and the total profit. In

her declaration, Ms. Rubin explains in detail how she performed her calculations, and notes the specific discovery materials that support her calculations. Rubin Dec. ¶¶ 3-6. In particular, between January 2006 and May 2008 the defendants spent $1,654,450.36 to acquire 36,082 units of Microsoft Student Media software from their foreign suppliers, and resold them for $1,875,405 in revenue. Thus, the total profit attributable to the infringing conduct is $220,954.64. The defendants do not challenge the accuracy of these figures.

### B.

Microsoft also argues, and the defendants do not dispute, that Mr. Craghead is personally liable for the infringement. In the Eleventh Circuit, "[a]n individual, including a corporate officer, who has the ability to supervise infringing activity and has a financial interest in that activity, or who personally participates in that activity is personally liable for the infringement." Southern Bell Tel. and Tel. Co. v. Associated Tel. Directory Publishers, 756 F.2d 801, 811 (11th Cir. 1985) (citation omitted). Microsoft presented ample evidence showing that Mr. Craghead was the moving force behind his company's infringement. He owns a 99 percent stake in Technology Enterprises and is its only employee. He even testified he is the only person involved in the business decisions. Meanwhile, Mr. Craghead did not present any evidence or

even arguments to avoid personal liability.[3] He is therefore jointly responsible for the copyright damages.

C.

Finally, Microsoft urges the Court to enter a permanent injunction against Technology Enterprises to protect Microsoft from the threat of continuing copyright infringement. Microsoft attached a proposed injunction order to its submissions. A permanent injunction does not automatically issue upon a finding of copyright infringement. See eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 392 (2006) ("Like the Patent Act, the Copyright Act provides that courts 'may' grant injunctive relief 'on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.'") (quoting 17 U.S.C. § 502(a)). Rather, a plaintiff seeking a permanent injunction must satisfy a four-factor test, and the Court's decision to grant or deny injunctive relief is discretionary. Id. at 391. Microsoft must demonstrate: (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. Peter Letterese and Assocs., Inc. v. World Inst. of Scientology Enters.,

---

[3] Microsoft also presented uncontested evidence that Mr. Craghead would be considered vicariously and contributorily liable under the Southern Bell analysis, too.

Int'l, 533 F.3d 1287, 1323 (11th Cir. 2008). Microsoft submits that the four-part test is met. Among other things, Microsoft argues the defendants' infringement confuses the public and harms Microsoft's customer relations. Microsoft also points out that Technology Enterprises has exhibited a pattern of infringement, despite being subjected to a separate permanent injunction issued by a federal district court in Utah. This demonstrates a realistic likelihood of future violations, which could not easily be remedied by damages. The defendants have not responded to any of these arguments. Thus, the Court is satisfied an equitable remedy is warranted, and it would not disserve the public. The Court will enter Microsoft's proposed permanent injunction by separate order.

### III. **Defendants' motion**

#### A.

As noted above, none of the defendants' written submissions or oral arguments were aimed toward creating fact disputes about, (1) Microsoft's calculation of damages, (2) Mr. Craghead's personal liability, or (3) whether a permanent injunction is warranted. Rather, the defendants focus on two arguments why Microsoft is not entitled to recover damages. Both theories involve the i4i litigation.

By way of background, in March 2007, a Canadian company, i4i LP, sued Microsoft in the Eastern District of Texas for patent infringement, claiming Microsoft incorporated a piece of i4i's

patented technology ("the '449 patent") in certain versions of Microsoft *Word 2003* and *Word 2007*. See i4i Ltd. Partnership v. Microsoft Corp., 670 F. Supp. 2d 568 (E.D. Tex. 2009). After a seven-day trial, the jury found Microsoft liable for willful patent infringement. The jury rejected Microsoft's argument that the '449 patent was invalid, and awarded $200 million in damages to i4i. Id. at 573. The district court later increased the damages by $40 million because Microsoft's infringement was willful (id. at 596), and granted i4i's motion for a permanent injunction preventing Microsoft from selling the infringing products in the future. Id. at 601-602. Microsoft appealed to the Federal Circuit, asserting a variety of appellate arguments, but the court ultimately upheld the $240 million damages award as well as the permanent injunction (with the exception that the effective date of the injunction was extended until January 11, 2010). See i4i Ltd. Partnership v. Microsoft Corp., 598 F.3d 831, 864 (Fed. Cir. 2010). The United States Supreme Court granted certiorari in October 2010.

### B.

Both of the defendants' arguments about damages involve the i4i case. First, the defendants draw attention to Paragraph 1 of the i4i injunction, which prohibits Microsoft from "selling, offering to sell, and/or importing in or into the United States any Infringing and Future Word Products." See i4i LP v. Microsoft Corp., Case No. 07-cv-113, ECF No. 413 (E.D. Tex., August 11,

2009). It is undisputed that many of the 36,082 Student Media discs that Technology Enterprises imported between January 2006 and May 2008 contained a version of *MS Word* that infringed on the '449 patent.[4] The defendants argue the discs are therefore subjected to the injunction. Since Microsoft is enjoined from selling the discs, the defendants claim Microsoft should also be barred from suing third parties for their profits from selling the discs.

The Court acknowledges the superficial twist the Texas injunction presents to the damages calculation. Neither side has identified an infringement case from this circuit (or any other) in which the copyright holder sought damages under § 504(b) in relation to a third party's unauthorized sale of a product, which product the copyright holder itself was enjoined from selling. Although this factual scenario is evidently unusual, it does not present a particularly difficult legal question. Allowing Technology Enterprises to invoke the i4i injunction as a way to avoid paying damages would be senseless.

First, the Texas injunction was prospective. The Federal Circuit noted that "[t]he scope of this injunction is narrow," i4i, 598 F.3d at 861, and it "does not affect copies of Word sold or

---

[4] For simplicity's sake, the Court will assume all 36,082 units contained the '449 patent. At the October 10, 2010 hearing I denied the defendants' request for limited discovery on the issue of how many of the discs contained the '449 patent because I find the question to be immaterial to the damages equation, for the reasons discussed below.

9

licensed before the injunction goes into effect." Id. at 839. The Federal Circuit emphasized that "[i]t applies *only* to users who purchase or license Word *after* the date the injunction takes effect." Id. at 186. Second, the injunction simply does not prevent Microsoft from enforcing its copyrights on Student Media software. In explaining the injunction, the Texas district court noted the '449 patent was an "independently-marketable" technology with a "dedicated marketplace," until Microsoft usurped it with *MS Word*, thereby causing i4i to "[lose] a, perhaps irretrievable, opportunity in the early days of the custom XML market." i4i Ltd. Partnership v. Microsoft Corp., 670 F. Supp. 2d 568, 600 (E.D. Tex. 2009). In other words, the irreparable harm that justified the injunction was the ongoing harm to i4i's ability to capture a marketplace. Awarding copyright damages to Microsoft does not augment the "irreparable harm" that justified the injunction in the first place. The two are complete distinct issues. However, *not* awarding damages to Microsoft would disserve the public interest, by allowing an admitted copyright infringer escape with impunity.[5]

Finally, Microsoft points out it is not seeking to recover lost revenue attributable to the defendants' United States-sales of foreign-made Student Media. Indeed, § 504(b) entitles a copyright

---

[5] Upon consideration of the public interest factors, the district judge in Texas allowed Microsoft to continue providing support to customers who bought the infringing discs before the injunction. A similar public interest is served by allowing Microsoft to prosecute people who infringed their copyrights.

holder to recover "the actual damages suffered by him or her as a result of the infringement, and *any profits of the infringer that are attributable to the infringement*" (emphasis added). Microsoft is relying on the second phrase of § 504(b) to seek disgorgement of Technology Enterprises' ill-gotten profits, not Microsoft's lost profits. Thus, the injunction has no effect on Microsoft's recovery of the $220,954.64.

### C.

As a second argument, the defendants' assert that Microsoft is not entitled to copyright damages because its copyright in the Student Media is invalid.[6] Subject to certain exceptions, 17 U.S.C. § 411 requires copyright holders to register their works in accordance with the requirements of the Copyright Act before bringing a claim for copyright infringement. Parties accused of copyright infringement often argue that inaccurate information submitted by the copyright holder in an application for registration invalidates the registration. Under § 411(b)(1), however, a certificate of copyright registration is valid "regardless of whether the certificate contains any inaccurate information" unless both of the following requirements are met:

> (A)   the inaccurate information was included

---

[6] Copyright invalidity is a defense to a claim of infringement, not an argument about damages. The Court previously granted Microsoft's motion for partial summary judgment concerning the defendants' infringement. Nevertheless, I will briefly address the defendants' arguments.

11

> on the application for copyright registration with knowledge that it was inaccurate; and
>
> (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.

17 U.S.C. § 411(b)(1). The next sub-section, § 411(b)(2), creates a procedure for district courts to seek the advice of the Register of Copyrights as to the effect of allegedly "inaccurate information" on the validity of a copyright registration:

> (2) In any case in which inaccurate information described under paragraph (1) is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration.

17 U.S.C. § 411(b)(2).

Technology Enterprises contends Microsoft submitted "inaccurate information" in the registration process, *i.e.*, Microsoft critically failed to disclose its knowledge that certain versions of *MS Word* used in the Student Media contained the '449 patent.[7] But the defendants' only allegation about "inaccurate information" is that: "Based on the Texas judgment and findings the applications submitted by Microsoft to the Registrar of Copyrights contained knowingly false information. Therefore, Microsoft's

---

[7] In arguing that the copyrights should be considered invalid, the defendants rely on a number of cases decided before the 2008 amendment of § 411 to include the "regardless of whether the certificate contains any inaccurate information" language.

claims related to Microsoft Word and Microsoft Office in this action are barred." Defs.' Mot. Sum. Judgment, p. 4 ECF No. 158-1. This allegation of "inaccurate information" is insufficient to trigger the Court's obligation to seek advice from the Register of Copyrights under § 411(b)(2). Cf. Olem Shoe Corp. v. Washington Shoe Co., 2010 WL 3505100 at *2 (S.D. Fla., Sept. 03, 2010) (holding that allegations of inaccurate information are sufficient to trigger advisement requirement). It has already been decided in this case that the copyrights at issue are valid. That was the premise of the Court's previous summary judgment ruling as to Technology Enterprises' liability for copyright infringement, and that is the law of the case. Technology Enterprises did not invoke 17 U.S.C. § 411(b)(2) earlier in the case, and even now stops short of asking the Court to confer with the Copyright Office. Instead, perhaps fearing that a re-evaluation of Microsoft's copyright by the Register of Copyrights wouldn't change the inevitable outcome, the defendants simply urge the Court to invalidate the copyright on the present record, without advice from the Register of Copyrights. The Court declines to do so. Accordingly, it is hereby:

**ORDERED AND ADJUDGED:**

1. The plaintiff's motion for summary judgment as to damages is hereby GRANTED, and the defendants' cross-motion for summary judgment is DENIED.

2. It is ordered that final judgment is hereby entered in favor of the plaintiff, Microsoft Corporation, and against the defendants, Technology Enterprises, LLC, and James Craghead, jointly and severally, in the amount of $220,954.64, as the amount of profits the defendants earned from importing and distributing Microsoft's copyrighted works, for which let execution issue.

3. Microsoft's proposed permanent injunction will be entered by separate order.

**DONE AND ORDERED** in Miami, Florida, March 28, 2011.

WILLIAM M. HOEVELER
SENIOR UNITED STATES DISTRICT JUDGE